NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LEVERNE CLINTON,

        Plaintiff,

  v.

JERSEY CITY POLICE DEPARTMENT,
ILIAS VOUTSAS, CHRISTOPHER KOSZYK,
MARIA SANCEZ,

        Defendants.

Civ. Action No. 07-5686 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

In this civil rights action, brought under 42 U.S.C. § 1983, plaintiff Leverne Clinton ("Clinton") alleges that defendants violated his Fourth Amendment rights by using excessive force during their attempts, and eventual success, in arresting him. All defendants, the Jersey City Police Department ("JCPD") and individual Officers Maria Sanchez ("Sanchez"), Christopher Koszyk ("Koszyk"), and Sergeant Ilias Voutsas ("Voutsas") (collectively, "defendants"), have moved for summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 56. [D.E. 66.]

The Court's jurisdiction is proper pursuant to 28 U.S.C. § 1331.

**I. STATEMENT OF FACTS**

The Court recognizes that Clinton's status as an incarcerated *pro se* litigant may relieve him of certain procedural requirements. *See e.g., Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002) (stating that it is difficult for a *pro se* inmate to generate record evidence in support of his

1

claims and thus, the affidavits he submitted were "'about the best that can be expected from him [at the summary judgment phase of] the proceedings'" (quotation omitted)); *Jordan v. Allgroup Wheaton*, 218 F. Supp. 2d 643, 646 (D.N.J. 2002) (Irenas, J.), *aff'd* 95 Fed. Appx. 462 (3d Cir. 2004) (pro se plaintiff's failure to submit a Rule 56.1 statement leads court instead to draw relevant facts "primarily from Plaintiff's complaint, and the transcript of Plaintiff's deposition testimony, Defendant's Statement of Undisputed Material Facts and supporting exhibits").

Here, neither side has submitted a statement of material facts not in dispute, as required by New Jersey Local Rule of Civil Procedure 56.1(a). The Court will examine this case in light of the available record, which includes Clinton's complaint, the parties' briefs, the affidavits of Voutas, Koszyk, Sanchez, and Sean Conners (not a defendant in this suit), and the witness statements of Alexander Green and Sharr'Ri Bryant. The Court views disputed facts in the light most favorable to plaintiff, the non-movant. *N.J. Transit Corp. v. Harsco Corp.*, 497 F.3d 323 (3d Cir. 2007) (citation omitted).

It is undisputed that in the evening on February 11, 2006, Clinton was in a Walgreens Drug Store ("Walgreens"), and was subsequently confronted by a security guard, who brought him to a back room. (Br. 2, Opp'n Br. 2.) The parties' accounts diverge at this point.

According to Clinton's account of what happened next (which appears in pp. 2 and 3 of his opposition brief and the allegations in his complaint), he gave the security guard his "name and all other information," as well as a pill bottle and paperwork that he had just received from the hospital. He said he was attempting to renew a medication, and the guard instructed him to wait in the room while he went to "check out the information." The guard left the room, and Clinton waited.

At this point, Clinton claims that "the Police came into the store, and asked [him] to turn around, and [he] said 'for what??'" A struggle ensued when an officer took a soda can out of Clinton's hand—Clinton states he was drinking the soda "due to [his] sugar being low." The two officers "jump[ed]" on him, and then "wrestl[ed]" him to the ground. According to Clinton, once he was on the ground, the two officers, the security guard, and a store employee were "kicking" and "beating" him, until one officer said, "Let him go!" He got up and ran out of the store.

The rest of the story, as submitted in Clinton's opposition brief, unfolded a few hours later:

> [A]ll of these Police Officer's [sic] were looking for me, saying 'I tried to stab one of the Officer's [sic], while in the store.' Later then [sic] came to my appartment [sic] to look for me. I left through the back window and fled again out of fear of what they would do to me. Sometime [sic] after that, they came to another apartment and the owner told me not to open the door. Then after some minutes the owner opened the door. When the Officer's [sic] entered I was scared and hid in a closet. They told me to come out and I did. When I exited the closed [sic] one of the Officer's [sic] kicked me in the face. I brought my hands down to feel my face to see if I was in fact bleeding, then they began kicking me again. This is when they placed me in handcuffs, and kicked me some more and poked me with their night sticks. Then taking me to the Police car, they put the night stick[] back under my arms while being cuffed, lifting me up and throwing me into the back of the Police car. As they were lifting me up, I could feel my left shoulder coming out of place and I was in extreme pain. I was in possession of no weapon at the store or otherwise. I was not charged with any assault on any officer or weapons either when taken to the Police station.

Clinton filed a complaint on a pre-printed prisoner civil rights form on November 10, 2007. (Compl.) [D.E. 1.] Where instructed to state the facts, Clinton wrote that "Jersey Police officers Sanchez, Koszyk and Sgt Voutsas . . . beat [him] with night sticks and stomped [him] severely until [he] received broken ribs, torn rotory cup, head and knee injuries." (*Id.* 6.) He further alleged that he was going to "hav[e] surgery as a result of that beating." (*Id.*)

3

Defendants offer a conflicting account of what happened once they arrived at the Walgreens that evening. According to their moving brief and supporting affidavits, Sanchez and another officer not named in this suit arrived at Walgreens, responding to a complaint of a shoplifter. (Sanchez Cert. ¶ 2.) When they approached him, Clinton refused to put down the soda, as well as the syringes and insulin he was holding in an open black pouch. (*Id.* ¶ 3.) The officers and the security guard struggled to "subdue Clinton while he was kicking and punching" them. (*Id.* ¶ 4.) They "fell to the floor, at which time Clinton pulled out a large, purple handled screwdriver. Clinton then attempted to stab" the other officer. (*Id.*) Clinton fled, and according to her sworn testimony, Sanchez was not involved in the later pursuit and his arrest. (*Id.* ¶¶ 5, 7.)

Koszyk, in a sworn statement, gives the following account:

> 2. On February 11, 2006, at approximately 16:40 hours, Police Officer Giovanni Bove, Sergeant Voutsas, and I responded to 192 Clinton Avenue, believing that [] Clinton, a suspect in an armed robbery that occurred earlier that day, resided there.
>
> 3. Sergeant Voutsas contacted the superintendent of the building, who said that he had seen the suspect in apartment 2H with a male by the name of Jonathan. Sergeant Voutsas approached apartment 2H, knocked, and then heard scuffling and a woman screaming.
>
> 4. The woman screaming was[] Sharr'Ri Bryant . . . . She claimed that [Clinton] told her not to open the door . . . because he knew it was the cops. When she protested, he grabbed her arm, made a fist at her, and ran out the window.
>
> 5. At this time, I made an attempt to access the alleyway through the hallway window to get down to ground level. I then observed Clinton jumping out of the apartment window and then jump down the fire escape and proceed to square his body off towards me. I told Clinton I was the police and ordered him to stop.
>
> 6. Clinton refused to listen, and then lowered his shoulder in an effort to charge me. When Clinton made contact with me, we both fell to the ground and began to wrestle. Clinton struck me with a closed fist and right knee about my body.
>
> 7. Clinton then got up and ran north . . . as I followed close behind. Clinton . . . jumped onto a white table in order to climb over a fence that was approximately 15 feet high. I then jumped onto the white table and managed to grab Clinton's

>right foot as he was climbing the fence. While doing this, I slipped on the white table and fell . . . and Clinton fell from the top of the fence. . . . This appeared to have injured him, as he then proceeded to limp west through the yards on Clinton Avenue where I lost track of him.

(Koszyk Cert. ¶¶ 2-7.)

Voutsas was directly involved in the physical confrontation that occurred later that evening. According to his statement:

>6. [A]t 19:50 hours, the [JCPD] received information from Clinton's wife that Clinton was staying at 22 Lexington Avenue, Apartment 4G . . . . I knocked on the door of Apartment 4G while Police Officer Koszyk and Police Officer Manna waited outside the building incase [sic] Clinton tried to flee by using the fire escape.
>
>7. Police Officer Thomas Revell and I heard some commotion, arguing, and door slamming in the apartment. Alexander Green, the resident of the apartment, let us in and told us that Clinton ran into his bedroom in an attempt to flee, however he could not exit the building from that room. We asked Mr. Green if Clinton was armed, to which he responded "he did not know." We attempted numerous times to convince Clinton to surrender with no avail.
>
>8. I then carefully entered the bedroom and located Clinton hiding in the closet. I told him to exit the closet several times and then Clinton suddenly jumped out at me from the closet. A struggle ensued and Clinton struck me several times, causing me to drop my firearm. Out of fear that Clinton would get a hold of my firearm, I then wrestled him to the floor and held him there until back-up units arrived to help secure Clinton.
>
>9. Clinton was secured and searched incident to arrest and a knife was found in his back pocket. He was transported to the West District station where he complained that he was a diabetic and that he had pain to his left chest which he stated was from an injury he endured earlier from jumping over a fence.
>
>10. We then called the Ambulance which transported Clinton to the Medical Center for treatment.
>
>11. . . . Detective John Carroll took the statement of Sharr'Ri Bryant's account of what occurred on February 11, 2006 at 4:36 pm [sic] . . . .

(Voutsas Cert. ¶¶ 6-11.)

The witness identification statements filed by Bryant and Green support the testimony in these defendants' affidavits.

## II.  STANDARD OF REVIEW

A district court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FRCP 56(c).  No genuinely triable issue of fact exists when the moving party demonstrates—based on the submitted evidence, and viewing the facts in the light most favorable to the non-moving party—that no rational jury could find in the non-movant's favor.  *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

Once the moving party satisfies this initial burden of showing a genuine issue of material fact, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986), the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  FRCP 56(c).  In so doing, the non-moving party must offer identifiable facts that establish a genuine issue of material facts, not just "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  In evaluating the evidence, however, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster*, 32 F.3d at 777).

### III.  DISCUSSION

#### A.  *Excessive Force*

Courts analyze claims that police officers used excessive force in the course of an arrest under a reasonableness standard.  *Graham v. Conner*, 490 U.S. 386, 395 (1989).  The legal standard in an excessive force case is an objective one:  "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397.  In conducting this inquiry, the district court judge must consider factors such as:

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, whether the suspect is actively resisting arrest or attempting to evade arrest by flight, the possibility that the suspect is violent or dangerous, the duration of the action, whether the action takes place during the course of an arrest, the possibility that the individual is armed, and the number of persons that police must control at one time.

*Rab v. Borough of Laurel Springs*, 2009 U.S. Dist. LEXIS 118058, at *9 (D.N.J. 2009) (Bumb, J.); *see also Estate of Smith v. Marasco*, 430 F.3d 140 (3d Cir. 2005); *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are terse, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.

#### B.  *Qualified Immunity in Excessive Force Cases*

The doctrine of qualified immunity serves to "protect officers from the sometimes 'hazy border between excessive and acceptable force.'"  *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 926-27 (11th Cir. 2000)).  Defendants can invoke the defense, shielding themselves "'from liability for civil damages insofar as their

7

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In analyzing the qualified immunity defense, the court must determine: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson*, 129 S. Ct. at 816.

District courts in this Circuit recently have addressed the "intersection" of excessive force and qualified immunity, two principles that turn on the question of reasonableness, and the "somewhat unique scenario" presented for the purposes of summary judgment—i.e., if the question of whether an officer's use of force is generally left for the jury, how then can a judge grant summary judgment?  Judge Wolfson of this District shed light on the question in *Pagan v. Twp. of Raritan*, 2006 U.S. Dist. LEXIS 63016, at *17-18 (D.N.J. 2006):  Although "reasonableness under the Fourth Amendment should frequently remain a question for the jury, 'defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'"  (citing *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

Similarly, Judge Shiller of the Eastern District of Pennsylvania stated in *Faust v. Clee*, 2006 U.S. Dist. LEXIS 76770, at *13 (E.D. Pa. 2006), that a court can grant a summary judgment motion on the basis of qualified immunity, so long as the officer's use of force was objectively reasonable under the circumstances.  He posed three questions:  "(1) whether the facts, taken in the light most favorable to Plaintiff, establish that Defendants used excessive force; (2) whether the right not to be subject to excessive force is clearly established; and (3)

whether a reasonable officer would have believed that Defendants' conduct deprived Plaintiff of [his/her] clearly established constitutional rights." *Id.* at *14. In *Faust,* the plaintiff alleged that the defendant police officers used excessive force during her arrest. The court denied defendants' summary judgment motion because there were "genuine disputes of historical fact," and construing the evidence in a light most favorable to the plaintiff, she stated a viable Fourth Amendment claim. *Id.* at *14-15. The court reasoned that if the plaintiff's allegations were accepted by the factfinder, defendants would not be shielded by qualified immunity "because the right not to be subject to excessive force is clearly established and [defendants] could not reasonably have believed the force was lawful." *Id.* at *15-16 (citing *Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006)).

Returning to *Pagan*, Judge Wolfson denied summary judgment for the individual defendant on the same grounds because she determined that there was a material dispute of fact as to whether the defendant's use of force during an arrest was excessive, and if the plaintiff's testimony was found to be true, the defendant's use of force could be construed as unreasonable. *Pagan*, 2006 U.S. Dist. LEXIS 63016, at *21-22. A jury could find that the defendant's conduct violated a clearly established right of which a reasonable officer would have known. *Id.* at *23. And, "[i]t is for a jury to decide the 'disputed historical facts material to the qualified immunity question.'" *Id.* (quoting *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004)).

### C. Application

#### i. Sanchez, Koszyk, & Voutsas

Clinton's complaint asserts a 42 U.S.C. § 1983 excessive force claim against the individual defendant police officers for the events that included and followed the first encounter at Walgreens. From the facts presented, the Court sees three distinct incidents of alleged

9

excessive force: (1) when Sanchez, her partner, and the security guard confronted Clinton in the back room of Walgreens; (2) when Koszyk attempted to seize Clinton after he fled the first apartment and attempted to jump over a fence (note Clinton's account of the events is unclear as to whether he admits this confrontation occurred); and (3) when Koszyk, Voutsas, and another officer ultimately arrested Clinton.

Viewing the evidence in the light most favorable to Clinton, the Court finds a material dispute of fact as to whether defendants used excessive force during these confrontations and, therefore, is unable to grant summary judgment as a matter of law. If Clinton's account is accepted, he was "wrestled, kicked, and beaten" in Walgreens; later, when he voluntarily walked out of the closet where he was hiding, he was repeatedly "kicked" and "poked" with the officers' night sticks, even after he was in handcuffs; and he was eventually "thrown" into the back of the police car. The Court is satisfied that a rational jury, after determining that Clinton's account is true, could conclude that defendants' conduct constitutes the use of excessive force.

Defendants are not entitled to summary judgment as a matter of law on the grounds of qualified immunity, because viewing the record in the most favorable light to Clinton, their conduct could be interpreted as violations of clearly established constitutional rights of which a reasonable officer in the same circumstances would have known.

### ii. Jersey City Police Department

Clinton also asserts a claim against the JCPD. Local government entities are liable under § 1983 only if "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Brown v. Muhlenberg Township*, 269 F.3d 205, 214 (3d Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 238 (1989)). This threshold is satisfied in one of two ways: first, if the plaintiff alleges that his rights were violated as a result an

official policy or custom in the municipality; or second, if there is a "causal link" between the constitutional violation and a custom, even though the custom is not "official." *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). "In essence, the municipal body must be the 'moving force' behind the constitutional injury to the plaintiff." *Gulley v. Elizabeth City Police Dep't*, 2006 U.S. Dist. LEXIS 93698 (D.N.J. 2006) (Linares, J.), *aff'd* 340 Fed. Appx. 108 (3d Cir. 2009).

Clinton has not presented any evidence of the existence of a custom or policy, or a causal link between his excessive force claim and an unofficial custom. In fact, he does not make any allegations supporting a claim against the JCPD. His claims against the JCPD are dismissed.

## IV.   CONCLUSION

While the Court might have been able to discern whether the officer defendants were using acceptable force had the movants provided a better record, on the record presented they have failed to establish they are entitled to qualified immunity. Defendants' motion for summary judgment on plaintiff's complaint is granted in part and denied in part: plaintiff's claim against individual defendants Maria Sanchez, Christopher Koszyk, and Ilias Voutsas may proceed, while his claim against the Jersey City Police Department is dismissed.

An appropriate order will be entered.

/s/Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

Date: February 16, 2010